FILED
United States Court of Appeals
Tenth Circuit

February 4, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ESTEBAN MAGALLON-
MALDANADO,

Defendant-Appellant.

No. 13-3259
(D.C. No. 2:09-CR-20119-JWL-9)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

---

Esteban Magallon-Maldanado pleaded guilty to one count of conspiracy to

distribute and possess with intent to distribute various controlled substances, in

violation of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to 262 months'

imprisonment. Mr. Magallon-Maldanado, who is Hispanic, alleges on appeal that

he established during his sentencing proceeding a prima facie case of a race-based

disparity in the severity of the sentences received by his Hispanic and non-

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Hispanic coconspirators—suggesting that race played an invidious part in his own sentencing—and that the district court violated his rights under the Equal Protection Clause by failing to require the government to offer a race-neutral justification for the alleged disparity. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we reject Mr. Magallon-Maldanado's equal-protection argument and **affirm** the district court's judgment.

## I

On January 4, 2011, Mr. Magallon-Maldanado was indicted on several counts relating to his participation in a multimember drug-trafficking conspiracy. He pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute drugs on December 17, 2012.

The Presentence Investigation Report ("PSR")—prepared by the United States Probation Office using the 2010 version of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines")—determined that Mr. Magallon-Maldanado's total offense level was thirty-eight,[1] which, combined with his criminal history category of II, produced an advisory Guidelines range of 262 to

---

[1] The Probation Office determined that Mr. Magallon-Maldanado's base offense level was thirty-six under U.S.S.G. § 2D1.1 because of the quantity of drugs involved in the conspiracy to which he pleaded guilty. It then added two levels under § 2D1.1(b)(1) because he possessed a dangerous weapon, and added a further three levels because he was a "manager or supervisor . . . [of] criminal activity involv[ing] five or more participants" under U.S.S.G. § 3B1.1(b). The Probation Office subtracted three levels under § 3E1.1, however, because Mr. Magallon-Maldanado entered into a plea agreement and accepted responsibility, thus yielding a total offense level of thirty-eight.

327 months. On July 15, 2013, the district court entered an order directing the parties to file any objections to the PSR by August 2, 2013, and further requiring that any motions related to sentencing be filed by August 16, 2013.

Mr. Magallon-Maldanado belatedly filed a Sentencing Memorandum on August 22, 2013, raising various objections to the PSR and moving for a downward variance based on the sentencing factors listed in 18 U.S.C. § 3553(a). Among other downward-variance arguments,[2] Mr. Magallon-Maldanado relied on an alleged race-based sentencing disparity. A Hispanic man himself, Mr. Magallon-Maldanado contended that his Hispanic codefendants had received more severe sentences than his non-Hispanic codefendants. His sole support for this sentencing-disparity assertion was a chart showing that codefendants with Hispanic surnames appeared to have frequently received longer sentences than those with non-Hispanic surnames. He argued that this "[e]xtreme disparity between codefendants' sentences fail[ed] to serve the legislative intent of 18 U.S.C. § 3553(a)(6)." R., Vol. I, at 267 (Sentencing Mem., filed Aug. 22, 2013).

The government moved to strike the Sentencing Memorandum as untimely, and the district court granted this motion. In doing so, however, the district court stated that its ruling did not "preclude any arguments on behalf of Mr. Magallon-Maldanado" relating to the PSR, *id.*, Vol. II, at 28 (Tr. Sentencing Proceedings,

---

[2] Mr. Magallon-Maldanado also raised, as grounds for a downward variance, his drug addiction and remorse, and argued that the § 3553(a) factors should trump the mandatory minimum sentence in his case.

3

dated Oct. 10, 2013), and noted that it had "read and underst[ood] the basis of the argument" for a downward variance, *id.* at 86. But the court did not specifically address the sentencing-disparity claim. And, when given the opportunity, Mr. Magallon-Maldanado's counsel did not raise the issue.[3]

The district court determined that the PSR was accurate and overruled Mr. Magallon-Maldanado's objections to the contrary. The court declined to exercise its discretion to vary downward. It sentenced Mr. Magallon-Maldanado to a prison term of 262 months, the bottom of the advisory Guidelines range. This appeal followed.

## II

Mr. Magallon-Maldanado claims that he provided prima facie evidence during his sentencing that race played a constitutionally impermissible role in the sentencing decisions regarding his codefendants; this evidence, he reasons, suggested that race might have been at work in his sentencing as well. Consequently, according to Mr. Magallon-Maldanado, the district court was obliged under the U.S. Constitution's Equal Protection Clause to require the government to offer a race-neutral explanation for this disparity. Stated

---

[3] After listing what it understood to be Mr. Magallon-Maldanado's objections in the Sentencing Memorandum, the district court inquired whether there were "any other issues which need[ed] to be resolved" or if it had "missed an objection that [Mr. Magallon-Maldanado] ha[d] made." R., Vol. II, at 30. Counsel for Mr. Magallon-Maldanado did not bring up the sentencing-disparity issue at this point, or at any subsequent juncture in the proceedings.

concisely, in his own words, Mr. Magallon-Maldanado contends on appeal that the issue before us is

> whether a criminal defendant, who has presented facts sufficient to make out a prima facie case of an unconstitutional sentencing disparity based on race, must immediately bear the full burden of proving that race played a role in the sentencing of himself and co-defendants, or whether—as in the context of racially motivated preemptive challenges in voir dire—the government first is obligated to proffer a race-neutral justification for the sentencing disparity.

Aplt. Opening Br. at 1. Because we conclude, however, that Mr. Magallon-Maldanado failed to raise this theory before the district court—that is, he forfeited the issue for purposes of appeal—we review this constitutional claim only for plain error.[4] And, under the rigorous plain-error standard, we determine that Mr. Magallon-Maldanado cannot prevail because he cannot establish that any error by the district court was clear or obvious.

## A

Generally, a litigant has a difficult path to travel in seeking reversal of a district court's judgment based upon a legal theory that is presented for the first time on appeal. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127

---

[4] Given the district court's comments at sentencing about reading and digesting the arguments in Mr. Magallon-Maldanado's Sentencing Memorandum, we are willing to assume (without deciding) that Mr. Magallon-Maldanado *did* adequately preserve the sentencing-disparity argument made in his memorandum, despite the court's decision to strike that memorandum as untimely. However, this assumption offers Mr. Magallon-Maldanado no succor because, as explicated *infra*, the sentencing-disparity argument in his Sentencing Memorandum is *not* the same one that is before us on appeal.

5

(10th Cir. 2011) ("Where, as here, a plaintiff pursues a new legal theory for the first time on appeal, that new theory suffers the distinct disadvantage of starting at least a few paces back from the block."); *cf. Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) ("In the main, however, we have consistently refused invitations to consider new issues on appeal."). It is not sufficient for a party to present a theory for relief on appeal that falls under the same general legal category as the theory that it asserted to the district court; instead, it must present the *same* legal theory to us that it advanced before the district court. *See, e.g.*, *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) ("A party does not preserve an issue merely by advancing a related theory before the district court . . . ."); *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798–99 (10th Cir. 1996) ("'[W]here a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial' or presents 'a theory that was discussed in a vague and ambiguous way[,]' the theory will not be considered on appeal." (first alteration in original) (quoting *Lyons*, 994 F.2d at 722)); *Lyons*, 994 F.2d at 722 ("[W]e have consistently turned down the argument that the raising of a related theory was sufficient."). This principle stems from our desire to "preserve the integrity of the appellate structure" and to encourage parties to be diligent in their arguments at the trial level. *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997).

6

Where the failure to raise a theory is the result of neglect, a party has forfeited its claim. *See, e.g.*, *Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013) (noting that the plaintiff "failed to raise this argument before the district court—thus, forfeiting it"), *cert. denied*, --- U.S. ----, 134 S. Ct. 1874 (2014); *accord United States v. Lamirand*, 669 F.3d 1091, 1100 n.7 (10th Cir. 2012). As discussed further below, "we will entertain forfeited theories on appeal, but we will reverse a district court's judgment . . . only if failing to do so would entrench a plainly erroneous result." *Richison*, 634 F.3d at 1128.

On appeal, Mr. Magallon-Maldanado casts the alleged racial disparity in the sentencing of Hispanic and non-Hispanic coconspirators as prima facie evidence of a constitutional violation under the Equal Protection Clause. Before the district court, however, he only alleged a statutory violation of 18 U.S.C. § 3553(a)(6). In his Sentencing Memorandum, Mr. Magallon-Maldanado presented the sentencing-disparity argument as part of his claim that "a variance is warranted in light of all 18 U.S.C. § [3553(a)] factors." R., Vol. I, at 263 (capitalization altered). He argued that the disparity "fails to serve the legislative intent of 18 U.S.C. § 3553(a)(6)." *Id.* at 267. He also cited to *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006), an extra-circuit case[5] which involved the

---

[5] Mr. Magallon-Maldanado's reference to precedent from one of our sister circuits in no way persuades us to alter our view of his circumstances. "Even if we were bound by opinions handed down in other circuits, which we are not, we would agree with the district court . . . ." *Hill v. Kan. Gas Serv. Co.*, 323

(continued...)

7

unreasonableness of a sentence under § 3553(a) and turned on the relative culpability of two coconspirators. *See* 439 F.3d at 932.

At bottom, Mr. Magallon-Maldanado's arguments to the district court evinced a deliberate choice to frame his sentencing-disparity claim under the rubric of § 3553(a)'s factors, and we should (and do) afford this decision significance. Although the alleged race-based sentencing disparity among his codefendants could seemingly have provided the basis for Mr. Magallon-Maldanado to assert a constitutional claim under the Equal Protection Clause before the district court, he asserted no such claim. Accordingly, for purposes of appellate review, we treat Mr. Magallon-Maldanado's equal-protection claim arising from the purported sentencing disparity as forfeited.

**B**

"[I]n order to prevail in an appellate challenge regarding [a forfeited] issue, a defendant must make a sufficient showing of error under the plain-error standard." *United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012). A party seeking to establish plain error faces a high burden; it must demonstrate "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *United States v. Banks*, 761 F.3d 1163, 1186 (10th Cir.) (quoting *McGehee*, 672 F.3d at 876) (internal quotation marks

---

[5](...continued)
F.3d 858, 869 (10th Cir. 2003).

8

omitted), *cert. denied*, --- U.S. ----, 135 S. Ct. 308 (2014). Even if a party meets these demanding requirements, we will only exercise our discretion to correct the error if "it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *McGehee*, 672 F.3d at 876 (internal quotation marks omitted).

We conclude that Mr. Magallon-Maldanado's claim stalls at the second plain-error prong—i.e., he cannot show that the district court committed a clear or obvious error in failing to require the government to offer a race-neutral justification for the alleged race-based sentencing disparity. To be clear or obvious, the error must be contrary to "current, well-settled law." *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011). Ordinarily, this means that "either the Supreme Court or this court must have addressed the issue." *United States v. Fishman*, 645 F.3d 1175, 1193 (10th Cir. 2011) (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)) (internal quotation marks omitted).

Yet, Mr. Magallon-Maldanado admits that the issue of "[w]hether a sentencing court must require the government to proffer a race-neutral justification . . . after the defendant has presented prima facie evidence of an Equal Protection violation" is "an open question of law." Aplt. Opening Br. at 1. In his brief, he does not cite to a single case from the Supreme Court, our court, or even any of our sister circuits, that has resolved this particular question, much less resolved it favorably to Mr. Magallon-Maldanado. And we are not aware of any. Instead, he attempts to establish the existence, in the sentencing context, of a race-

9

neutral-justification requirement based upon *Batson v. Kentucky*, 476 U.S. 79 (1986), which imposed such a justification requirement on prosecutors in the context of their use of peremptory challenges in jury selection for trials.

With commendable candor, at oral argument, however, Mr. Magallon-Maldanado's counsel conceded (on the assumption that we found the equal-protection challenge to be forfeited) that—given the lack of any precedent extending the *Batson* framework to the sentencing context—the district court's failure to order the government to proffer a race-neutral justification could not amount to the kind of error that would satisfy the second prong of the plain-error test—*viz.*, could not qualify as clear or obvious error. Our survey of the law gives us no reason to doubt this acknowledgment: Mr. Magallon-Maldanado's equal-protection challenge—his sole challenge on appeal—cannot survive the second prong of plain-error review; therefore, the district court's sentencing judgment must be upheld.

### III

For the foregoing reasons, we **AFFIRM** the district court's sentencing

judgment.[6]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[6]     Mr. Magallon-Maldanado filed a motion to seal his opening brief on the grounds that it makes repeated references to the PSR. While "[p]resentence reports are confidential," 10th Cir. R. 11.3(E), the mere fact that PSR information is referenced in a brief is not a sufficient basis (without more) for sealing the entire brief. Mr. Magallon-Maldanado does not point to any specific PSR-derived information that he references that would justify sealing his entire opening brief (nor does he seek to seal portions of it). Therefore, his motion to seal is **DENIED**.