**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHNATHAN JOHNSON,

    Defendant - Appellant.

No. 24-6146

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:23-CR-00180-JD-1)**
_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Cedric C.M. Bond, Assistant United States Attorney (Robert J. Troester, United States Attorney, and Tanner Herrmann, Special Assistant United States Attorney, on the brief), Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

Johnathan Johnson was tried and convicted on charges of indecent exposure while he was in Bureau of Prisons custody in Oklahoma. The district court sentenced him to three years' confinement.

Johnson brings two challenges on appeal—one to the admission of prior-acts evidence relating to his prior conduct of exposing himself to female guards; the other, to his sentence. At trial, the government introduced evidence of Johnson's four previous acts of public masturbation in his cell to show intent, knowledge, and lack of mistake. The evidence comprised (1) BOP disciplinary logs and (2) incident reports. Johnson contends that this evidence was inadmissible under Federal Rules of Evidence 404(b), 403, and 803(6). As for his sentence, Johnson argues that the district court committed procedural error by misapplying 18 U.S.C. § 3553(a)(6), since it failed to consider that most states cap indecent-exposure offenses at one year.

We disagree. First, Johnson failed to preserve two of his arguments: he waived his Rule 404(b) argument and forfeited his Rule 803(6) argument. We therefore decline to reach the Rule 404(b) issue and conclude that admitting the evidence under Rule 803(6) was not plain error. Nor did the district court abuse its discretion when conducting the Rule 403 weighing of prejudice. Second, Johnson's sentencing suffered no procedural error because the district court properly applied § 3553(a)(6). Exercising our jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

## I.    Background

In April 2023, Johnson was serving a federal sentence in BOP custody. BOP had temporarily housed him in an Oklahoma facility—the Federal Transfer Center in Oklahoma City—en route to a federal prison in Tennessee. While at the Oklahoma facility, he shared a cell with another inmate. Each cell housed a distress alarm that an inmate could use to alert correctional officers that he needed help.

Johnson used the distress alarm to call a correctional officer. And having summoned assistance, he then grabbed a chair, stood on it so his genitals could be viewed through the cell door's window, pulled his pants down, and started masturbating. Correctional Officer Heather Ray responded to the alarm. When she approached Johnson's cell, she saw him masturbating through the cell door's window. She wrote a report detailing what she saw.

This was not Johnson's first incident; BOP had disciplined him for public masturbation on four previous occasions. Each occasion occurred at USP Pollock in Louisiana. The first incident report stated that an officer observed Johnson, while on suicide watch, "st[and] completely naked facing towards [the officer] holding his erect penis, and moving his right hand in a back and forth motion on his erect penis." R. Vol. I, at 268. The second incident report said an officer "observed inmate Johnson pull his penis out through his smock with his left hand and proceed[] to stroke his penis." R. Vol. I, at 271. The third incident report described a similar occurrence: the officer saw Johnson "standing in the window. He was holding his penis in his right hand and proceeded to ejaculate on the glass." R. Vol. I, at 274. The fourth incident report noted that an officer saw Johnson "stroking his erect penis in an up and down motion. He then proceeded to grab[] tissue and clean himself off, after that he cut the lights off and went to sleep." R. Vol. I, at 277.

The government used the Assimilative Crimes Act, 18 U.S.C. § 13, to charge Johnson with indecent exposure under Oklahoma law. *See* Okla. Stat. tit. 21 § 1021(A)(1) (criminalizing "willfully and knowingly . . . lewdly expos[ing] his or

her person or genitals in any public place, or in any place where there are present other persons to be offended or annoyed thereby"). Before trial, the government noticed its intent to introduce the logs and discipline hearing officer (DHO) reports under Rule 404(b). (These reports are not the incident reports at issue on appeal.) It also filed a motion in limine seeking to admit the logs and DHO reports under Rule 404(b) as evidence of intent, knowledge, and lack of mistake, and under Rule 803(6)'s hearsay exception for business records. Johnson then responded with two filings. First, he submitted a brief arguing that the evidence (1) was not probative of intent, knowledge, or lack of mistake; (2) was inadmissible under Rule 403; and (3) did not meet the business-records exception. Then he filed his proposed jury instructions, one of which covered "negligent exposure"—specifically, "[a] defendant does not act knowingly and willfully expose [sic] himself when the exposure is either done by accident or done negligently." R. Vol. I, at 69.

The district court conducted a *Huddleston* analysis and ruled that the prior-acts evidence satisfied Rule 404(b).[1] It concluded *first* that the government offered the evidence for the proper purpose of showing intent, knowledge, and lack of mistake; *second*, that the evidence was probative of Johnson's intent because the evidence

---

[1] We have interpreted *Huddleston v. United States*, 485 U.S. 681 (1988), as imposing a four-part test for admission of prior-acts evidence: (1) the evidence must "be offered for a *proper purpose* under Rule 404(b)," (2) the evidence "must be *relevant* under Rule 401," (3) the evidence's "probative value . . . must not be substantially outweighed by its potential for unfair prejudice under Rule 403," and (4) the district court must issue a limiting instruction, if requested. *United States v. Henthorn*, 864 F.3d 1241, 1247–48 (10th Cir. 2017).

rested on "a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense"; *third*, that any undue prejudice could be diminished through various protective measures, so that it did not outweigh the evidence's probative value; and *fourth*, that it would issue a limiting instruction. R. Vol. I, at 146–56 (quoting *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007)).

After the *Huddleston* analysis, the district court conducted a Rule 403 balancing. It ultimately excluded the DHO reports under Rule 403 because they presented cumulative evidence and risked creating a mini-trial. Next the court ruled that the logs were business records under Rule 803(6). Johnson's argument that the logs and reports did not fall into this exception rested on two points: they are not generated in the ordinary course of business and they are not a regular practice. His arguments were similar at the limine conference. Neither in his brief nor at the conference did he argue that a different rule—Rule 803(8)—*excluded* the logs and reports.

The case proceeded to trial but ended with a mistrial. The government elected to retry the case. This time it tried a different evidentiary strategy: it would still introduce the logs but would switch out the DHO reports for the incident reports written by BOP officials. The government moved in limine to admit the logs and the incident reports. And Johnson responded by incorporating his previous responses; he again did not mention Rule 803(8) as a basis for excluding the incident reports.

The district court admitted the logs and the incident reports. It incorporated its previous ruling admitting the logs and then concluded that the incident reports fell within Rule 803(6) and satisfied Rule 403. The court incorporated the previous order's Rule 803(6) reasoning but did a separate Rule 403 analysis of the incident reports. The court concluded that their probative value was not substantially outweighed by undue prejudice.

This time, the jury convicted Johnson, and the district court sentenced him to three years' confinement. Johnson filed a notice of appeal.

## II.    Discussion

Johnson challenges both the admission of prior-acts evidence and the procedural reasonableness of his sentence. But before addressing those challenges, we must determine which arguments Johnson preserved for our review. We conclude that he waived his Rule 404(b) challenge, forfeited his Rule 803(6) challenge, and preserved both his Rule 403 and procedural-reasonableness arguments.

### A.    Preservation

We generally do not consider issues "not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). To properly preserve an issue for our review, a party must "alert[] the district court to the issue and seek[] a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012). Although a party need not use any "magic words" to preserve an issue, the party must still bring the particular argument to the district court's attention. *United States v. Finnesy*, 953 F.3d 675, 690 (10th Cir. 2020). And importantly, a litigant must present "the *same*

legal theory to us that it advanced before the district court"; "[i]t is not sufficient for a party to present a theory for relief on appeal that falls under the same general legal category as the theory that it asserted to the district court." *United States v. Magallon-Maldanado*, 598 F. App'x 586, 589 (10th Cir. 2015) (citations omitted).

### 1. Rule 404(b)

Johnson does not explicitly focus his argument on the district court's application of the *Huddleston* factors. *See United States v. Merritt*, 961 F.3d 1105, 1111 (10th Cir. 2020). Instead, he raises a general argument that admission of the prior-acts evidence was error because his *intent* was never disputed. In the context of this case, that issue goes to the second *Huddleston* factor: that "the evidence must be *relevant* under Rule 401." *Henthorn*, 864 F.3d at 1247.[2]

Johnson did not preserve that argument below. He cites to several places in the record but none of them support his argument on appeal. At best, the record shows that Johnson objected that the government did not "sufficiently articulate the

---

[2] We acknowledge that *Huddleston* itself said that Rule 404(b) prohibits prior-acts evidence "unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston*, 485 U.S. at 685. That phrasing suggests overlap between relevance and proper purpose. But we have broken out that analysis into two elements: that the evidence be offered for a proper purpose and that the evidence be relevant. A purpose is proper if it is "utilized for any of the 'other purposes' enumerated in Rule 404(b)," such as intent or knowledge. *Henthorn*, 864 F.3d 1241, 1248 (citation omitted). The government here offered the evidence to show intent, and the district court admitted it for that reason. We think Johnson's "intent was not disputed" argument is better analyzed under the relevance *Huddleston* element. *See* Fed. R. Evid. 401(b) (requiring that a fact be of consequence in order to be relevant).

reasoning" that the logs and reports were "necessary to show intent, knowledge, or lack of mistake." R. Vol. I, at 120. In particular, he focused on the logs' and reports' relevance: they could not show intent because the infractions did not specify whether Johnson intended others to view him while he masturbated.[3] And then Johnson objected that the *Huddleston* factors were not met. He explained that the evidence failed the first factor because the evidence was not offered for a proper purpose and failed the second factor because the evidence's "relevance [was] questionable *without any additional supporting evidence*." R. Vol. I, at 121. Johnson reiterated that same objection throughout the proceedings.

But he never argued that the evidence was irrelevant because his intent was not disputed. To the contrary, he appeared to *dispute* intent by requesting a negligent-exposure instruction and casting doubt on whether the reports and logs could show intentional exposure without corroborating evidence. But on appeal, he has pivoted to a new argument: that the logs and reports were irrelevant because intent was not seriously disputed. That argument is "a new theory on appeal that falls under the same general category as an argument presented at trial." *United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017). Such arguments are not preserved for our

---

[3] R. Vol. I, at 120 ("The . . . report does not indicate that Mr. Johnson was acting in a manner where he intended to or believed others could view him."); R. Vol. I, at 120 ("While Mr. Johnson admitted to engaging in a sexual act, it is completely unclear that admission involved a knowing and intentional exposure."); R. Vol. I, at 120 ("The third allegation . . . fails to give sufficient information to confirm a knowing and intentional exposure."); R. Vol. I, at 120 ("[I]n the fourth allegation . . . it is unclear whether . . . Mr. Johnson willfully and knowingly exposed himself.").

review. *Id.*; *see also Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1244 (10th Cir. 2009) ("[W]e generally do not consider new theories on appeal . . . ."). The district court did not have a chance to address Johnson's argument that the logs and reports had no relevance because intent was not disputed. Without that opportunity, we cannot fault the district court. Johnson forfeited this argument.

But he did something more; he also waived the argument. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (explaining that the court generally refuses to consider waived arguments). Failing to raise an argument in the district court, as Johnson did here, forfeits the argument. But "[w]hen an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all." *Id.* (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011)). Johnson has never pressed plain error on the Rule 404(b) argument on appeal—not in the opening brief, not in the reply brief, and not at oral argument. We therefore decline to consider Johnson's Rule 404(b) argument.

### 2.    *Rule 403*

Johnson again raises his "intent was not disputed" argument to challenge the district court's Rule 403 determination. In his view, because intent was not in

dispute, the logs' and reports' probative value was substantially outweighed by the risk of undue prejudice.

Johnson partially preserved his Rule 403 argument in the district court. Again, the record shows no place where Johnson argued for minimal probative value based on a lack of dispute regarding intent. Instead, he made a threadbare Rule 403 objection: "any probative value is substantially outweighed by prejudicial effect." R. Vol. I., at 121. That objection sufficiently preserves a general Rule 403 argument—i.e., that the district court struck the wrong balance when weighing probative force against prejudicial value. *See United States v. Herrera*, 51 F.4th 1226, 1253 (10th Cir. 2022). Johnson's argument assigned low probative value to the evidence because without further confirmation, it did not indicate that Johnson committed "intentional and knowing lewd exposure of private parts." R. Vol. I, at 11. But the record does not disclose Johnson's new theory on appeal, i.e., that the evidence had minimal probative value because intent was not disputed. And we do not consider "'a new theory on appeal that falls under the same general category' as an argument pursued in the trial court." *United States v. Mason*, 84 F.4th 1152, 1156 n.3 (10th Cir. 2023) (quoting *Little v. Budd Co., Inc.*, 955 F.3d 816, 821 (10th Cir. 2020)).

Johnson resists that conclusion by citing *United States v. Herrera*. 51 F.4th 1226. In *Herrera*, two defendants challenged the admission of prior-acts evidence under Rule 403. The government moved to admit evidence of the defendants' previous violent acts, and the defendants asked the court to balance the probative value and undue prejudice with "sensitivity" to the high risk of undue prejudice. The

court found the defendants' general Rule 403 argument preserved: "By invoking Rule 403 and requesting balancing, [defendants] preserved a general argument that the danger of unfair prejudice had substantially outweighed the probative value." *Herrera*, 51 F.4th at 1253. But though their objection preserved a general Rule 403 argument, they forfeited a more specific argument—that the probative value of the prior-acts evidence was minimal because it addressed an undisputed element. *Id.* at 1254.

Johnson is right that *Herrera* instructs us to deem preserved his general Rule 403 argument. But he misses *Herrera*'s other holding. He objected in the district court that "any probative value is substantially outweighed by prejudicial effect." R. Vol. I, at 121. That objection preserved his general Rule 403 balancing argument. But it did not preserve his "intent was not disputed" argument. Johnson makes the same misstep as the *Herrera* defendants: in the district court he argued for minimal probative value because the logs and reports did not demonstrate a knowing violation; he did not argue minimal probative value because intent was undisputed.

And as with his Rule 404 argument, he does not make a plain-error argument, so we deem the probative-value argument waived and decline to consider it. *See Leffler*, 942 F.3d at 1196.

### 3.    *Rule 803(6)*

Johnson also failed to preserve his Rule 803(6) argument. In the district court, Johnson argued that the logs and reports were inadmissible under Rule 803(6) because they failed Rule 803(6)'s own requirements. He explained that the logs and

reports failed Rule 803(6)(B)—which requires the record to be kept "in the course of a regularly conducted activity"—because an incident report "doesn't happen every day" and is not a "routine ministerial task." R. Vol. III, at 85. Then he added that they also failed Rule 803(6)(E)—which requires the evidence's opponent to show a lack of trustworthiness in the record—because "I don't believe we have enough information here . . . to go down the road of saying, 'All these allegations are reliable.'" R. Vol. III, at 87, 88 (commenting that the reports lack "the indicia of reliability where we just open the door under the hearsay rule whether it's any exception of 803 but especially 803(6)").

But on appeal Johnson switches theories. He argues that the evidence was inadmissible under Rule 803(6) because Rule 803(8) prohibits them. Johnson's objections below did not put the district court on notice that Rule 803(8) excludes the logs and reports here; he focused entirely on whether the evidence satisfied Rule 803(6) itself. Because that is a new theory on appeal, it is forfeited. *Leffler*, 942 F.3d at 1196.

In sum, we are left with three arguments to consider: Rule 403 and sentencing error, which we review for abuse of discretion, and Rule 803(6), which we review for plain error.

## B.    *Rule 403*

Johnson argues that the district court should have excluded the reports under Rule 403. We review the district court's ruling for an abuse of discretion. *United States v. Piette*, 45 F.4th 1142, 1156 (10th Cir. 2022). A district court abuses its

discretion when its ruling "finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record." *Tanberg v. Sholtis*, 401 F.3d 1151, 1160 (10th Cir. 2005) (quoting *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994)).

The district court did not abuse its discretion. Rule 403 permits the district court to exclude evidence if "its probative value is substantially outweighed" by some impermissible danger. Fed. R. Evid. 403. Here, Johnson raises the specter of unfair prejudice and "needlessly presenting cumulative evidence." When we review a district court's Rule 403 ruling, we assign the evidence "maximum reasonable probative force" and "minimum reasonable prejudicial value." *Henthorn*, 864 F.3d at 1256 (citing *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008)).

Johnson challenges the district court's balancing on two grounds. First, he argues that evidence of his previous infractions was irrelevant because intent was not disputed. We have already declined to consider that waived argument. Second, he contends that even if relevant, the evidence had only minimal probative value and high prejudicial value. Johnson says that the evidence's only probative value was based on character inferences and "would only be probative of mens rea in the most technical sense that the government was required to prove knowing and purposeful conduct after Mr. Johnson plead not guilty." Appellant Br. at 26.

We disagree. Johnson's argument falters at two steps: he assigns unfair weight to each side, and moreover he does not show that the unfair prejudicial value *substantially* outweighed the probative value. Johnson first gives unreasonably low

13

probative value to the evidence. "Technical sense" or not, Johnson's mens rea was a necessary element that the government had to prove. *See* Okla. Stat. tit. 21 § 1021(A)(1) (criminalizing "willfully and knowingly . . . lewdly expos[ing] his or her person or genitals in any public place, or in any place where there are present other persons to be offended or annoyed thereby"). And the record shows that Johnson's intent remained a live issue. Johnson requested at the first and second trials a negligent-exposure instruction. R. Vol. I, at 69 (proposed instructions); R. Vol. III, at 193 (instructions conference for first trial); R. Vol. III, at 388 (instructions conference for second trial). Though the judge refused to give that instruction, the request displays Johnson's inclination to dispute intent. Moreover, Johnson challenged the evidence's probative value for the very reason that it could not, without corroboration, show an intentional violation. Johnson's arguments in the district court discredit his argument here that the evidence was only minimally probative of intent.

Johnson further assigns minimal probative value because the evidence is only probative through impermissible character inferences. Rule 404(b) does not exclude prior-acts evidence "whenever a propensity inference can be drawn." *United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015) (quoting *Moran*, 503 F.3d at 1145). It excludes the evidence only if the prior-acts evidence's "relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id.* That forbidden propensity inference is "a general inference of *bad character* or *criminal disposition*." *Henthorn*, 864 F.3d at 1253 (emphasis added) (citation omitted). The

14

jury here was not asked to draw an inference about Johnson's bad character or criminal disposition—i.e., that Johnson has a "propensity to commit bad acts" like indecent exposure. *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010). Rather, as in *Henthorn*, they were asked to draw an inference about Johnson's *intent*, an inference that "rest[s] on a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense." *Id.* (quoting *Moran*, 503 F.3d at 1145); *see also* 22B *Wright & Miller's Federal Practice & Procedure* § 5250 (2d ed. 2025) (explaining that the "theory of probabilities" justifies inferences of intent).[4]

Johnson also faults the district court for underestimating the prejudicial value of the evidence. He explains that the evidence (which we acknowledge was graphic) tempted the jury to infer Johnson's guilt simply from the "salacious" acts described in the reports. Appellant's Br. at 27. But all evidence poses a risk of prejudicing the defendant; Rule 403 focuses only on *unfair* prejudice. *See* Fed. R. Evid. 403. Juries are often confronted with unseemly evidence, but Rule 403 "does not protect defendants from devastating evidence in general." *United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021). The fact that evidence may perturb the jury does not

---

[4] Johnson rejects that the "logic of improbabilities" applies here because the act, if done, "was unquestionably done" with the requisite mens rea. Appellant's Br. at 25. But that does not attack what inferences are being drawn; it just raises the well-worn argument that the evidence had no probative value because intent was not seriously in dispute.

necessarily trump probative value.   And that is particularly true when the evidence is no more repugnant than the crime charged.  *See United States v. Martinez*, 92 F.4th 1213, 1248–49 (10th Cir. 2024) (finding that prior-acts evidence of murders was not unfairly prejudicial because "'given the nature of this violence infested case,' there is 'no reason why testimony about an additional murder would cause the jury an improper emotional reaction" (quoting *Herrera*, 51 F.4th at 1260)); *see also United States v. Elsheikh*, 103 F.4th 1006, 1027 (4th Cir. 2024) (finding that prior-acts evidence was not unfairly prejudicial because it was "no more sensational or disturbing than the crimes with which [the defendant] was charged. (quoting *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995)).

We must also consider prejudice in light of the district court's limiting instruction.  The district court resolved to give a limiting instruction to diminish the danger of unfair prejudice.  It did so, and we presume the jury followed it.  *Herrera*, 51 F.4th at 1273 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

In addition to unfair prejudice, Johnson argues that the district court "arbitrarily" reversed its initial decision to exclude the DHO reports as cumulative evidence and then admitted the incident reports.  But he misreads the district court's

16

order, which explained that the incident reports did not constitute cumulative evidence because they offered new details and gave factual context to the reports.[5]

Perhaps if we weighed the evidence in the first instance, we would exclude the logs and reports. But de novo review is not our task here. And we cannot fault the district court for heeding our instruction that exclusion under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (citation omitted). The district court did not abuse its discretion in its Rule 403 balancing.

### C.    *Rule 803(6)—Plain Error*

Johnson next argues that the logs and reports were inadmissible hearsay. In his view, Rule 803(8) prohibits admitting through Rule 803(6) reports generated by law-enforcement personnel. Because Johnson did not preserve this issue below, we review the district court's admission of the evidence for plain error.

To reverse on plain error, Johnson must show an "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzales-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). This is a difficult showing to make. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014); *United*

---

[5] This additional factual context was relevant because as Johnson argued below, the simple naming of the infraction did not indicate whether Johnson's indecent exposure was knowing or not.

17

*States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) (explaining that plain-error makes relief "difficult to get, as it should be" (citation omitted)).

Johnson fails the second prong—plainness. "Error is plain only if it is . . . contrary to well-settled law." *United States v. Commanche*, 577 F.3d 1261, 1270 (10th Cir. 2009) (quoting *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009)). That usually requires "a Supreme Court or controlling circuit authority resolving the issue." *United States v. Jones*, 74 F.4th 1065, 1070 (10th Cir. 2023) (citing *United States v. Marshall*, 307 F.3d 1267, 1270 (10th Cir. 2002)). But another legal source can render an error plain, too: the text of a statute or rule. *See id.* We have thus found plain error when "the Federal Rules of Criminal Procedure plainly rendered the decision below erroneous, even when there was no binding case on point." *Id.* at 1270–71 (citing *United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016)). But no matter the source relied on, the error must be "so clear or obvious that it *could not be subject to any reasonable dispute*." *United States v. Berryhill*, 140 F.4th 1287, 1302 n.3 (10th Cir. 2025) (quoting *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016)).[6]

Johnson offers no binding caselaw that would make the admission of the evidence here plain error. But, he says, Rule 803(8) and a circuit consensus do make

---

[6] We have said at times that error may be plain when "a consensus exists in other circuits." *E.g.*, *United States v. Valdez-Aguirre*, 861 F.3d 1164, 1166 (10th Cir. 2017). But Johnson provides no case where we have held that an error was plain on the basis of a circuit consensus alone. *See id.* (avoiding issue because appellant did not "rely on . . . a consensus of other circuits"); *United States v. Archuleta*, 865 F.3d

it plain. We disagree. Rule 803(8)'s text did not clearly and obviously prohibit the district court's admission of the logs and reports. That is because Rule 803(8)'s prohibition on law-enforcement reports does not plainly apply to other hearsay exceptions. The prohibition's potential, but not definite, scope is inconsistent with plain error. *See Berryhill*, 140 F.4th at 1302 n.3 (explaining that an error is not plain if "there is an ambiguity in the authority" that "muddies, rather than clarifies, the appropriate legal rule"); *Finnesy*, 953 F.3d at 697 (concluding that without "plain terms," sentencing guidelines could not make error plain).

Start first with Rule 803(8)(A)'s text. It sets out the public-records exception for hearsay. Under that exception, a record of public office is not hearsay if,

> (A) it sets out:
> . . .
> (ii) a matter observed while under a legal duty to report, *but not including, in a criminal case, a matter observed by law-enforcement personnel*; or
> (iii) in a civil case or *against the government in a criminal case*, factual findings from a legally authorized investigation

Fed. R. Evid. 803(8)(A) (emphasis added). Romanettes ii and iii collectively contain the "law-enforcement exception," which carves out from the public-records exception reports generated by law enforcement in certain situations. *See* 30B *Wright & Miller's Federal Practice & Procedure* § 6885 (2025 ed.) Johnson, however, says

---

1280, 1290–91 (10th Cir. 2017) (finding plain error because "government d[id] not seriously dispute" the point and the statute's language was clear, as was "the case law interpreting it").

Rule 803(8)'s language does more than that: it not only carves out law-enforcement reports from Rule 803(8), but carves them out of Rule 803(6), too.

Johnson tellingly does not explain what part of Rule 803(8)'s text supports that reading. Johnson argues that it is clear and obvious that "Rule 803(6) cannot be used as an end-run around the prohibitions set out in Rule 803(8),"[7] Appellant's Br. at 39, but his argument does not rely on textual support. And without that support, we cannot see how he has shown that the Rule itself "plainly render[s]" limiting the law-enforcement exception to Rule 803(8) error.

But even accepting Johnson's premise that such a reading is plausible, Rule 803(8) does not necessarily alert the district court that the law-enforcement exception must apply here. That is because another reading is also plausible: that the carveout applies only to the language immediately preceding it. As the Seventh Circuit has noted, "[t]he trouble with the formal structure of the Rule 803 exceptions is that only Rule 803(8) contains this restriction on the use of investigatory documents in criminal cases. None of the other exceptions, such as the business records exception, limit the use of the documents in criminal cases." *United States v. Blackburn*, 992 F.2d 666, 671 (7th Cir. 1993). So "[t]he question naturally arises whether the

---

[7] Johnson does, however, rely on Rule 803(8)'s text to show that the evidence here could not be admitted under Rule 803(8) itself. But his discussion about admission under Rule 803(6) is devoid of textual analysis.

qualifiers in [Rule 803(8)(B)(ii) and (iii)] should be read into the other hearsay exceptions." *Id.*

We need not impose a binding interpretation of the Rule here. All we must do is determine whether the Rule's language is so clear that it renders admitting the logs and reports under Rule 803(6) plain error. And with both readings plausible, we do not find plain error here. Even if Johnson's interpretation is the better approach (which this court could adopt in the right case), that fact does not itself establish plain error.

Johnson also points to a consensus in the circuits as proof that the district court committed plain error. *See United States v. Cain*, 615 F.2d 380, 382 (5th Cir. 1980); *United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979); *United States v. Oates*, 560 F.2d 45, 66 (2d Cir. 1977); *United States v. Smith*, 521 F.2d 957, 966 (D.C. Cir. 1975).[8] We do not think the authority of four circuits makes the error here plain. *See Finnesy*, 953 F.3d at 697 (concluding that lack of controlling caselaw made "it all the

---

[8] Johnson says the Eleventh Circuit held that Rule 803(8) prohibits the admission of law-enforcement reports under Rule 803(6). *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1341 (11th Cir. 2009). To be sure, the court said "section (6) does not open a back door for evidence excluded by section (8)." *Id.* (quoting *United States v. Cain*, 615 F.2d 380, 382 (5th Cir. 1980) (per curiam)). But that sentence is dictum. *See Bay v. Anadarko E&P Onshore LLC*, 73 F.4th 1207, 1216 (10th Cir. 2023) (defining dicta as statements about legal principles "not necessarily involved nor essential to determination" of the case (citation omitted)). The court there found that reports generated by private individuals did not fall within Rule 803(8); it therefore had no reason to determine whether Rule 803(8) prohibited admission of them under Rule 803(6).

more pellucid that the district court's purported error was anything but 'clear or obvious' under the plain-error framework").

Johnson has come forward with no binding caselaw—either from the Supreme Court or from our court—that plainly answers the question here. "This effectively sounds the death knell . . . on plain-error review." *United States v. Garcia*, 946 F.3d 1191, 1210 (10th Cir. 2020) (citations omitted). And though Johnson points to authority from other circuits, we cannot conclude—especially given the Rule's potential breadth—that the district court made an error so clear or obvious that it could not be subject to reasonable dispute. The district court did not commit plain error.

### D.     *Procedural Error*

Finally, Johnson argues the district court committed procedural error when sentencing him. The court reviews the procedural reasonableness of a sentence for an abuse of discretion, "under which we review de novo the district court's legal conclusions" and "review its factual findings for clear error." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 (10th Cir. 2014) (quoting *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir.2012)).

Procedural reasonableness focuses on "the manner in which the sentence was calculated." *Id.* at 1261 (quoting *United States v. Masek*, 588 F.3d 1283, 1290 (10th Cir. 2009)). Procedural error occurs when the district court "fail[s] to consider the § 3553(a) factors . . . or fail[s] to adequately explain the chosen sentence." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). It also occurs if the district court "misapplies"

the § 3553(a) factors. *United States v. McIntosh*, 232 F. App'x 752, 757 (10th Cir. 2007)

(citing *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007)).

Johnson argues that the district court misapplied § 3553(a)(6). That provision

instructs courts to "avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct." 18 U.S.C.

§ 3553(a)(6). At Johnson's sentencing hearing, he noted that Oklahoma's indecent-

exposure statute authorizes a maximum ten-year sentence for indecent-exposure

offenses, which is higher than those of many other states—they generally cap the

sentence at one year or less. And, Johnson continued, because the government

prosecuted Johnson for an assimilated crime, the court would be able to impose a

sentence in accordance with Oklahoma's higher permissible sentence—causing a

hypothetical disparity with other indecent-exposure sentences in federal courts where

the lower one-year maximum would apply.[9]

The district court rejected that argument. It explained that under § 3553(a)(6),

"the factor to consider . . . is the need to avoid unwarranted sentencing disparities

among defendants with similar records who have been found guilty of similar

conduct." R. Vol. III, at 451. The court acknowledged that other states generally cap

sentences at one year, and then it evaluated Johnson's record in particular. The

---

[9] We say hypothetical because Johnson offered no evidence of actual indecent-exposure sentences; in fact, he disclaimed the need to do so. R. Vol. III, at 441 ("We don't need to have presentence reports from other federal jurisdictions where people have been accused of this in the Bureau of Prisons. We don't need to know what the Court handed down . . . .").

district court explained that he had two prior federal convictions and "had a significant disciplinary history while in custody." *Id.* at 452.

Johnson claims that was a misapplication of § 3553(a)(6). We fail to see why. The court took the exact steps required by the provision: the district court verbatim quoted the appropriate factor, acknowledged the various authorized sentences, considered Johnson's specific record, and concluded that even if a disparity existed, it was warranted. We think that the court's explanation was an adequate and faithful application of § 3553(a)(6). Johnson therefore fails to carry his burden to show that the district court misapplied § 3553(a)(6).

## III.  Conclusion

For the foregoing reasons, we affirm the district court.

No. 24-6146, *United States v. Johnson*
**FEDERICO**, Circuit Judge, concurring.


I agree that Johnson's conviction and sentence should be affirmed. I write separately, however, to note the complexity of Assimilated Crimes Act (ACA) sentencing jurisprudence.

The ACA is a unique statute. Unlike other federal criminal laws that define prohibited conduct and establish punishments for engaging in prohibited conduct, the ACA relies on state law to perform this function. When a person is within the special maritime and territorial jurisdiction of the United States and commits a crime that, "although not made punishable by any enactment of Congress, would be punishable" under applicable state law, Congress has provided that this person "shall be guilty of a *like offense* and subject to a *like punishment*." 18 U.S.C. § 13(a). The ACA is no stranger to the Tenth Circuit, where we have often applied its incorporation of state law to crimes committed in Indian Country, *see, e.g.*, *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011), military installations, *United States v. Adams*, 140 F.3d 895 (10th Cir. 1998), and federal prisons, *United States v. Mitchell*, 799 Fed. Appx. 608 (10th Cir. 2020) (defendant convicted of indecent exposure at the Federal Transfer Center in Oklahoma City).

This case is also unique because there is no applicable sentencing guideline, so "the provisions of 18 U.S.C. § 3553 shall control." U.S. Sent.

Guidelines § 2X5.1 (2024). For Johnson's case, there are very few actual comparator cases of federal defendants similarly situated, making the application of the ACA's sentencing scheme unusually difficult.

We have said that "the ACA requires *like* punishment, not *precisely the same* punishment." *United States v. Christie*, 717 F.3d 1156, 1171–72 (10th Cir. 2013). "And federal courts *must* depart from state guidance when Congress has expressed a specific and contrary penal policy." *Id.* at 1172. Our cases therefore establish that district courts must typically apply the statutory maximum and minimum sentences prescribed by state law. "But in imposing a sentence between those mandatory values," the district court may depart from state law, and indeed must do so if federal sentencing policy conflicts with the state sentencing scheme. *United States v. Polk*, 61 F.4th 1277, 1280 (10th Cir. 2023). So even if a federal defendant could have received a higher (or lower) sentence in state court, the district court is free to impose a sentence that is within the state's prescribed range *and* consistent with federal sentencing policy.[1]

---

[1] And to reiterate, the district court *must* disregard the state's prescribed sentencing range if it would conflict with federal sentencing policy. Federal sentencing law is not necessarily more favorable for defendants. As *Polk* held, for example, federal courts sentencing under the ACA may not depart from a state's mandatory minimum via the state "safety valve law" unless § 3553's criteria for imposing a sentence below a statutory minimum are satisfied. 61 F.4th at 1280–81.

2

Here, Johnson argues that his sentence conflicts with the statutory command to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Oklahoma law, as assimilated into federal law, authorizes up to ten years imprisonment for the indecent exposure crime Johnson was convicted of committing. Okla. Stat. tit. 21 § 1021(A). Johnson himself was sentenced to three years. But in thirty-nine states and two territories, Johnson argues, someone convicted of an analogous crime could not be sentenced to more than one year in prison, making this same conduct a misdemeanor offense. Only two states appear to authorize sentences in excess of three years, and Oklahoma's authorized sentencing cap of ten years for this offense is the high-water mark for every state and corresponding federal district. So, Johnson argues, his sentence leads to an unwarranted sentence disparity: only people convicted in a handful of federal courts could, as a matter of law, receive the sentence he did, even though people in the vast majority of other courts, convicted of the same crime and who have similar or worse criminal records, would receive far less time. Put differently, he argues that he received a higher sentence by happenstance or only because he was temporarily detained at the Federal Transfer Center in Oklahoma City rather than another federal prison facility in another state.

3

But here's the catch. As our opinion points out, this disparity, at least as briefed by Johnson, is largely hypothetical, not actual, because few people are similarly situated to Johnson in the federal system. Unlike other cases, where we have data and can reach statistical conclusions as to the averageness of a defendant's sentence, here it is beyond peradventure that Johnson's sentence is beyond the mean, median, and mode of national possibilities. That makes this case unique. Still, a direct comparison of actual cases or some reason why actual comparators are unnecessary was not presented by Johnson or addressed by the parties.

Nonetheless, there is merit to Johnson's argument. "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity." *United States v. Booker*, 543 U.S. 220, 253 (2005). Sentences arising under the ACA may vary substantially across the country's federal court system without any basis in the nature of the conduct or the prior record of the defendant. To remedy this inconsistency and harmonize the ACA with § 3553(a)(6), a sensible application of our precedent would require a sentencing judge to consider whether a sentence, even if authorized by a state's unusually broad sentencing range, would lead to disparities with defendants convicted under analogous state laws in other federal courts. If such disparities are unwarranted by the record, our cases probably require that the judge acknowledge the variance in state punishment

4

ranges and depart from state law to impose a non-disparate sentence, consistent with federal law.

As the court's opinion points out, however, there is some evidence in the record that the district court here did consider the national landscape and the argument presented by Johnson and found that, even if there was a disparity, it was warranted by other sentencing factors. Hence, there was no procedural error. And in any event, Johnson insufficiently addresses our prior ACA cases to fully develop his § 3553(a)(6) argument. With the understanding that the complexity of this sentencing scheme may be ripe for further consideration given more developed arguments by future defendants, I am pleased to join this opinion in full.